UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:23-24663-WILLIAMS/GOODMAN

NESTOR PERERA,

      Plaintiff,

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE

      Defendant.
_____/

## <u>REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS</u>

Nestor Perera was a passenger on the Carnival *Conquest.* On December 30, 2022, he left the Lido Deck (which features swimming pools, spas, restaurants, and some staterooms) and began walking to his interior stateroom with his grandson when he "suddenly tripped and fell" on the carpet. Perera claims that the carpeting was bundled, poorly maintained, or improperly placed. Before the fall, as he was making his way to his stateroom, Perera saw what appeared to be carpet cleaning equipment in the area but no warning or caution signs. Perera was injured, causing him to have emergency surgery (to repair a fracture of the proximal left humerus) shortly after the ship returned to port in Miami.

Perera filed a 34-page, five-count Complaint against Defendant Carnival Corporation. [ECF No. 1]. Count I is for Negligent Failure to Maintain; Count II is for Negligent Failure to Warn; Count III is for Negligent Training of Personnel; Count IV is for Negligent Supervision of Personnel; and Count V is for Negligent Design, Construction and Selection of Materials. Carnival filed a motion to dismiss, Plaintiff filed a response and Carnival filed a reply. [ECF Nos. 9; 12; 15]. United States District Judge Kathleen M. Williams referred [ECF No. 11] the dismissal motion to me for a Report and Recommendations.

Carnival's dismissal motion asserts the following arguments: (1) Perera failed to adequately plead that Carnival had actual or constructive knowledge of the alleged danger (*i.e.*, a bundled carpet which caused him to trip); (2) Plaintiff alleged a "*trip and fall*" but his Complaint contains numerous immaterial allegations concerning notice related to "*slip and falls*"; (3) the Complaint's allegations about warning signs and their possible relation to notice are contradictory; (4) Perera does not sufficiently allege how or why Carnival was negligent in implementing or operating its training program; (5) Perera's negligent supervision claim contains no factual allegations about Carnival's knowledge of an employee who was negligently supervised; and (6) the Complaint lacks sufficient allegations concerning notice of the hazardous condition arising from the purportedly negligent design.

For the reasons outlined below, the Undersigned **respectfully recommends** that

Judge Williams **grant in small part and deny in large part** the motion to dismiss and dismiss *one* of the counts in the Complaint (albeit **without** prejudice and with **leave** to file an amended complaint). At bottom, though, the Complaint is problematic and inadequate on one count because it is, from a substantive perspective, overly conclusory and devoid of sufficient specific factual allegations concerning *supervision*. Therefore, the specific recommendation is to grant the motion, in part, and dismiss Count IV but deny, in part, the motion to dismiss Counts I, II, III and V (for negligent maintenance, negligent failure to warn, negligent training, and negligent design).

I.    <u>**Factual Background (*i.e.*, Plaintiff's Allegations)**</u>

The following paraphrased allegations concern all five counts of Plaintiff's Complaint:

Carnival knows that its Lido Deck has staterooms which are "exposed" to carpeting. [ECF No. 1, ¶ 12]. Carnival also knows that carpeting covers the 28 staterooms in the Interior Rooms section of the Lido Deck which is repetitively and continuously exposed to ongoing maintenance and foot traffic -- which causes carpet bundling. *Id*. It also knows that its carpeted floors are dangerous when bundled, due to foot traffic, lack of carpet maintenance or poor carpet placement -- all of which creates a dangerous and hazardous condition. *Id.*

Given this scenario, Carnival requires its crewmembers to place yellow caution signs to warn passengers about the bundled, poorly maintained, or improperly placed

carpeting. *Id.* The crewmembers are required to maintain, keep, control, and preserve the safety of the carpeting because passengers frequently walk on it. Therefore, Plaintiff says, Carnival "knew or should have known that its passengers may not know" that the Interior Room stateroom area on the Lido Deck "can be dangerous." *Id.* Carnival's carpet danger "is not an open and obvious hazardous condition." *Id.*

On December 30, 2022, Carnival "allowed its crewmembers to ignore the bundled, poorly maintained, or improperly placed carpeting" near stateroom 9209 (Perera's room) by "stationing an inadequate number of crewmembers in the area and failing to supervise them." *Id.* at ¶ 13. In addition, Carnival failed to "post adequate warnings of water on the floor, such as signs, cones, or barriers." *Id.* Furthermore, Carnival failed to train its crewmembers "on how to properly warn passengers about the dangerous conditions." *Id.*

At approximately 5:50 p.m., when the sun was still out and there was no rain, Perera headed for his room (*i.e.,* interior stateroom 9209) with his grandson by walking on the main run carpet in the Interior Stateroom area of the Lido Deck. *Id.* Although there were no warning signs, Perera still walked cautiously along the main run carpet, toward his room, when he suddenly tripped and fell on the bundled, poorly maintained, or improperly-placed carpeting, a scenario which existed "for an extended period of time." *Id.*

Carnival allowed the bundled, poorly maintained or improperly-placed carpeting

4

to create a dangerous and hazardous condition even though it had experience of "at least 50 years of operating open decks." *Id.* at ¶ 18. The carpet hazard "existed for hours and hours of crew and/or passengers tracking, dripping, and/or otherwise bundling carpet through the day and into the evening night of December 30, 2022." *Id.* Carnival had been operating its waterpark, pools, jacuzzies, showers and spas the entire day and into the night. During that time, "hundreds if not thousands of passengers and crew repetitively and continuously walked, ran and or otherwise caused [sic] carpet to bundle up from the main carpet in the Interior Stateroom section of its Lido Deck 9." *Id.*

Carnival failed to warn its passengers that this area was dangerous or poorly maintained. *Id.* at ¶ 19. It failed to train, create and/or supervise its crew to reasonably ensure that its slip and fall procedures, policies and/or programs were used and applied to this area. *Id.* Had Carnival, through its crew, inspected, maintained, or at least warned its passengers and crew of this carpet danger, Perera would not have tripped, fallen, and sustained injuries. *Id.*

Carnival failed to mark the bundled, poorly maintained or improperly-designed carpeting with a warning sign or to cordon off the area because of the apparent carpet cleaning equipment. *Id.* at ¶ 20. Moreover, Carnival allowed this carpeting to "remain [sic] the floor at night with low lighting, without warnings, with floor material known to be dangerous when not maintained and without any slip-resistant coatings." *Id.* Perera could not see this carpeting because it was "not visible and blended into the floor, the

carpeting is shiny and changed colors with the lighting from Carnival's ongoing deck party event and the degree of dangerousness and hazard was not readily apparent to the human naked eye." *Id.*

Carnival operates Open Deck areas on its fleet of 24 cruise ships and has done so since it first began operating cruise ships in 1972. Over the past 50 years, Carnival knows that its Open Deck and stateroom main run carpet sections are some of the most-trafficked areas by passengers and crew. *Id.* at ¶ 22. Furthermore, Carnival knows that its crew is required to clean, inspect, maintain, and keep the carpeting safe. *Id.*

Carnival knew or should have known about the dangerous and hazardous conditions from prior, similar incidents involving trip and falls. The Complaint lists six prior slip and fall incidents. Some of the specific years (from December 2015 through October 6, 2019) are listed; other incidents do not have a date associated with them. *Id.* at ¶ 23. All six involve incidents on the Lido Deck; none of them are described as being falls on carpet or even in the Inside Stateroom area (as opposed to, for example, the outside deck near the pools). *Id.*

While Perera was still on the floor after his fall, a Carnival crew member placed caution signs in the area where he fell. *Id.* at ¶ 24.

Carnival knew or should have known about the carpet's dangerous condition because of the length of time the condition existed. *Id.* at ¶ 25. The *Conquest* was scheduled to depart the port of Miami at 3:30 p.m. and the incident occurred at approximately 5:50

p.m., which means "there was at least 1 hour from the time that it departed to the time that the incident occurred." *Id.* In addition, a Carnival crew member had earlier placed carpet cleaning equipment nearby. *Id.*

Moreover, Carnival knew or should have known about the carpet's dangerous condition because there were crew members in the area where Perera fell. *Id.* at ¶ 26.

Although Perera fell in a carpeted area, he alleges that Carnival "knows that its *outdoor* decks are slippery when wet," as demonstrated by its daily newspaper, which warns passengers to "use caution on *outdoor* decks as they can be slippery." *Id.* at ¶ 27 (emphasis supplied).

The Complaint alleges that Carnival knew or should have known about the dangerous condition for another reason: its training presentation "open decks" identifies "open decks" as "Areas of Most Potential Slip and Falls." Those policies and procedures require crew members to inspect and maintain the floors "in a hazard free manner." *Id.* at ¶ 28. This training also requires crew members to place caution signs on walkways which become "repeatedly hazardous wet and/or are known to be dangerous." *Id.*

Furthermore, Carnival knows that, without warnings, its passengers may not know how hazardous its carpets are when bundled up or poorly maintained. This demonstrates that Carnival "knew or should have known that its hazardous bundled carpet deck floor walkways are not an open and obvious condition." *Id.*

Similarly, Carnival knew or should have known "from experience that these

conditions regularly accumulate on its carpet in the Lido Deck 9" and are therefore "foreseeable conditions." *Id.* at ¶ 29.

In addition, Carnival knew or should have known that "relevant industry standards, regulations, and codes dictate that dictate [sic] the safety standards for the carpets on board its ship" have led to the "formulation and promulgation of stair and walkway standards and guidelines which apply to the marine environment." *Id.* at ¶ 30.

The following additional allegations concern Count I:[1]

Carnival owes a duty as a common carrier to its passengers to maintain the main run carpet in the area in question in a safe manner. *Id.* at ¶ 34. Carnival's operations involved attracting crowds to central locations, such as the Lido Deck, and controlling and ensuring the safety of those crowds. *Id.*

Carnival was under a legal duty to comply with all mandatory international safety regulations, including those which say that "safe escape routes shall be provided." *Id.* at ¶ 35. The Interior Stateroom section of Lido Deck 9 on Carnival's *Conquest* includes "escape routes that Carnival knew or should have known it must maintain in a safe, clear, clean and secure condition." *Id.*

Carnival breached its duty to maintain the main run carpet, causing a dangerous and hazardous condition in which the carpet became bundled, poorly maintained or

---

[1]      Virtually all of the allegations asserted in each specific count are merely repeats of allegations raised above for *all* the counts. So the Undersigned lists only the *new* allegations for each of the specific counts.

improperly placed/designed. *Id.* at ¶ 38. Had Carnival properly maintained the floor on the open deck of Deck 9 in a safe manner, Perera would have never slipped and fell on the Lido Deck. *Id.*

The following additional allegations concern Count II:

Carnival owes a duty as a common carrier to its passengers to warn of dangers known to Carnival where Carnival invites or reasonably expects passengers to go. *Id.* at ¶ 42. Carnival breached the duty to warn because its crew members failed to reasonably and regularly place signs, stickers, light, and other visual or written notices on or near the main run carpet, and failed to make audible announcements about the bundled, poorly maintained, or improperly-placed carpeting. *Id.* at ¶ 46.

Had Carnival properly warned Plaintiff of the carpet hazard, Perera would not have slipped and fell on the Lido Deck floor. *Id.* at ¶ 47.

The following additional allegations concern Count III:

Carnival owes a duty as a common carrier to its passengers to train its crew members to properly inspect, clean, dry, and warn of dangers where Carnival invites or reasonably expects passengers to go. *Id.* at ¶ 52. Carnival "should have become aware and could have easily discovered that it had failed to properly train its crew members given that the crew member(s) failed to inspect and maintain the subject area." *Id.* at ¶ 55. Similarly, the Complaint alleges that Carnival "should have become aware and could have easily discovered that it failed to properly train its crew members given that the

crew member(s) were failing to properly warn passengers of the dangerous condition on board the *CCL Conquest* including where Perera was injured on December 30, 2022." *Id.* at ¶ 56. Because the "crewmembers were not properly trained, those crewmembers also failed to inspect, clean and maintain the subject area." *Id.* at ¶ 58.

"Had Carnival properly warned Perera of the dangerous condition, Perera would have been aware of the dangerous condition." *Id.* at ¶ 59. Therefore, Perera would not have slipped and fell. *Id.*[2]

The following additional allegations concern Count IV:

Carnival was negligent by "failing to reasonably supervise its crew members to ensure that its crew members were properly inspecting, cleaning, maintaining and warning passengers" about the so-called carpet hazard aboard the *Conquest. Id.* at ¶ 69. Because the crewmembers responsible for warning, cleaning, maintaining, and inspecting the Interior Stateroom section of Lido Deck 9 were not properly supervised, they failed to properly and adequately warn passengers about the carpet risk and failed to properly inspect, clean and maintain the area in question. *Id.* at ¶ 70.

Had Carnival properly supervised its crewmembers, they would have inspected, cleaned, maintained, and warned Plaintiff about the carpet's dangerous condition. *Id.* at

---

[2]     Although this Count concerns negligent *training,* some of the allegations in this paragraph concern a negligent *failure to warn*, which was alleged in the prior Count. This Count does not contain a similar allegation (*e.g.*, had Carnival properly trained its crew members, Perera would have been aware of the dangerous condition and would not have slipped), concerning a failure to adequately train crew members, however.

¶ 71. Similarly, had Carnival properly supervised its crewmembers, Perera would have been aware of the dangerous condition and would never have fallen on the main run carpet in the Interior Stateroom section of Lido Deck 9 on December 30, 2022. *Id.*

The following additional allegations concern Count V:

Carnival has all of its ships, including the *Conquest* and its sister ships, custom made to its own design and specifications. After Carnival's designs are created, Carnival approved, and/or controlled or had the right to control the construction as well as the selection of all materials aboard the ship, including the flooring and carpeting. *Id.* at ¶ 77. Carnival maintains shoreside departments which are responsible for the design, selection, and construction of its ships -- and for changes and modifications to the design, construction, and selection of materials when Carnival refits or modifies its ships. *Id.* at ¶ 78. These shoreside departments consist of naval architects, engineers, designers, and other Carnival employees. *Id.*

Carnival custom built the *Conquest* in an Italian shipyard under Carnival's constant supervision. *Id.* at ¶ 79. Carnival had full access to the ship and the ability to reject and change any design or construction -- including the materials used on all the floors and surfaces which caused the slip and fall and Plaintiff's injuries. *Id.*

Because Carnival had the ultimate control over the design, construction, and selection of materials for its ships, it could have refused to approve the design, construction, and materials selection used for the main run carpet in the Interior

Stateroom section of its Lido Deck 9 on the *Conquest. Id.* at ¶ 81. Despite knowing that the main run carpet was dangerous, Carnival approved the installation of the flooring and carpeting it used on the ship. *Id.*

Carnival failed to design, construct, select, approve, and/or reject materials which complied with industry standards. *Id.* at ¶ 85. The design and/or materials approved or selected and used to construct the main run carpet in the Interior Stateroom section of Lido Deck 19 was unreasonably dangerous. *Id.*

Had Carnival properly designed, constructed, and selected the flooring and carpeting for the main run carpet in the Interior Stateroom section of its Lido Deck 9 aboard the *Conquest,* Plaintiff would never have fallen on December 30, 2022.

## II.   <u>Applicable Legal Standards and Analysis</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"[T]he standard 'simply calls for enough fact to raise a reasonable *expectation* that *discovery* will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545) (emphasis supplied). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, "the court must accept all factual allegations in a complaint **as true** and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (emphasis added).

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." It does not "require that a plaintiff specifically plead every element of a cause of action." *Balaschak v. Royal Caribbean Cruises, Ltd.*, No. 09-21196, 2009 WL 8659594, at *6 (S.D. Fla. Sept. 14, 2009) (citing *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001), which, in turn, cited Jack H. Friedenthal, et al., Civil Procedure, § 5.7 (2d ed. 1993) for the view that "[w]hat the pleader need not do is worry about the particular form of the statement or that it fails to allege a specific fact to cover every element of the substantive law involved.").

To properly plead a claim for negligence under the general maritime law of the United States, a plaintiff must allege that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach

13

actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

To survive a motion to dismiss, a plaintiff must plead sufficient facts to support each element of his direct liability negligence claims, including that [the defendant] had "actual or constructive notice of [a] risk-creating condition," at least where the risk is one commonly encountered on land and not clearly linked to nautical adventure. *See Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022); *Newbauer v. Carnival Corp.*, 26 F.4th 931, 935 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 212 (2022).

The plausibility standard "calls for enough fact to raise a reasonable expectation that **discovery will reveal evidence**" of the defendant's liability. *Chaparro*, 693 F.3d at 1337 (emphasis added) (reversing order dismissing claim against cruise ship operator and citing *Twombly*, 550 U.S. at 556). But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth. *See Mamani v. Berzain*, 654 F.3d 1148, 1153–54 (11th Cir. 2011).

*Chaparro's* holding about the link between discovery and the pleadings standard is consistent with some later, post-*Holland*/ post-*Newbauer* district court cases which factor in discovery when evaluating the sufficiency of a Complaint in a dismissal motion forum. *See generally Spotts v. Carnival Corp.*, No. 23-cv-22906, 2024 WL 111921, at *5 (S.D. Fla. Jan. 10, 2024) (denying Carnival's motion to dismiss negligent training claim and noting that "[s]ince the [p]laintiff **hasn't had the chance to take any discovery**, we can't imagine

asking a plaintiff to provide more detail than that [*i.e.*, allegations about failing to properly train crew members to inspect, clean, dry and warn passengers about the dangerous conditions aboard the vessel]" (emphasis added)); *see also Harper v. Vilsack*, No. 23-22590, 2024 WL 776022, at *7 (S.D. Fla. Feb. 26, 2024) (denying motion to dismiss disability discrimination count, explaining that "the fact that **discovery may be needed** by [the] [p]laintiff to demonstrate the truth of her specific, plausible factual allegations does not make the allegations **conclusory**" and noting that the need for discovery "make[s] any factual disputes inappropriate for resolution on a motion to dismiss" (emphasis supplied)).

At bottom, Carnival's motion challenges the factual sufficiency of the five counts asserting negligence claims, but plaintiffs like Perera are "not required to demonstrate that they can prove their allegations at the pleading stage." *Perricone v. Carnival Corp.*, No. 15-20309, 2016 WL 1161214 (S.D. Fla. Mar. 24, 2016) (denying cruise ship operator's motion to dismiss passenger's negligence claims and citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)).

As outlined above with summaries or actual excerpts from the lawsuit, Plaintiff's Complaint asserts several allegations which he says are sufficient for actual and constructive notice. Confronted with these allegations, Carnival's dismissal motion classifies them as being insufficient for the following reasons: (1) the Complaint alleges notice concerning slips and falls, not the injury presented here (which is a trip and fall on

carpeting); (2) Plaintiff alleges that Carnival requires crewmembers to post warnings signs (thus imputing notice) but the next paragraph alleges that Carnival failed to post adequate warnings; and (3) the Complaint is confusing because it inconsistently alleges that the signs should have warned of water on the floor but the condition claimed here is a different one (*i.e.*, a trip and fall on a carpet).

<u>Notice</u>

The Undersigned disagrees with Carnival's contention that the allegations about notice are inconsistent. The Complaint adequately alleges the correct standard of care (*i.e.*, failure to use reasonable care). It also discusses both bundled carpet and the added risk generated by water on a deck with pools and spas. Paragraph 18, for example, alleges that "[t]his bundled, poorly maintained, or improperly placed carpeting existed for hours and hours of crew and/or passengers tracking, **dripping**, and/or otherwise bundling carpet throughout the day and into the evening night of December 30, 2022." [ECF No. 1, ¶ 18. (emphasis added)].

Furthermore, Carnival has not called our attention to any cases where a personal injury complaint against a cruise ship operator is dismissed because some allegations describe a trip and fall while other allegations about notice concern a slip and fall. Perhaps this distinction might make a difference at the summary judgment stage, but this type of semantic difference is insufficient to justify an outright dismissal.

The Eleventh Circuit has held that the dangers involved in prior incidents do not

have to involve the same exact conditions on the same ships to constitute evidence of notice. *See Bunch v. Carnival Corp.*, 825 F. App'x 713, 718 (11th Cir. 2020) (finding that a different threshold on a different ship was sufficiently similar to constitute evidence of notice). In a relatively recent cruise ship case, the Eleventh Circuit held that "[b]ecause [plaintiff] came forward with evidence of a substantially similar prior incident, [it] conclude[d] that she established that Carnival had notice of the risk-creating condition." *Cogburn v. Carnival Corp.*, No. 21-11579, *11 (11th Cir. Apr. 25, 2022).

The Complaint alleges in ¶ 23 six prior incidents of falls on the Lido Deck, and Plaintiff contends that they are substantially similar for purposes of establishing constructive notice.

As explained in *Spotts*, 2024 WL 111921, at *2–3, courts in this District consistently find similar allegations sufficient to establish constructive notice on a motion to dismiss. In *Fawcett v. Carnival Corp.*, for example, Chief Judge Altonaga held that the plaintiff had "adequately allege[d] the existence of prior similar incidents" where the plaintiff "identifie[d] numerous slip-and-fall events, including fall incidents on wet flooring in the Lido Marketplace dining area on the Lido Deck of the *Breeze*—a vessel of the same class as the *Magic*—and slip and fall incidents specifically on wet or slippery areas of the Lido Deck of the *Magic*" and listed "specific dates and cite[d] cases associated with these incidents." *Fawcett v. Carnival Corp.*, 2023 WL 4424195, at *3 (S.D. Fla. July 10, 2023) (Altonaga, C.J.).

Although there might be a difference between a slip and fall and a trip and fall on the Lido Deck, the prior similar incidents needn't be identical to survive a motion to dismiss. *See Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015) ("The 'substantial similarity' doctrine does not require identical circumstances[.]"). And we think Perera's allegations of prior incidents are sufficiently detailed to pass muster, at least at this early phase of the litigation. *See Fawcett*, ⸺ F. Supp. 3d at ⸺ 2023 WL 4424195, at *3 (finding allegations of "fall incidents . . . on wet or slippery areas of the Lido Deck" sufficient to allege "the existence of prior similar incidents . . . push[ing] [p]laintiff's claims beyond mere conclusory recitals" (cleaned up)). In any event, "whether the alleged incidents are in fact substantially similar as to give notice is an issue of fact, which the Court need not resolve at the dismissal stage." *Spotts*, 2024 WL 111921, at *4.

In addition, there may be little difference between the specific facts surrounding a slip on the Lido Deck and a trip on that same deck, as one passenger might use one word and a different passenger might use another word for what is, in effect, the <u>same</u> type of fall. Likewise, a Carnival security officer, attorney, or paralegal might use one term while another Carnival employee might use the other to classify what is, in effect, the same mechanism of falling. *Cf. Lopez v. Carnival Corp.*, No. 22-cv-21308, 2022 WL 4598657, at *3 (S.D. Fla. Sept. 30, 2022) (Bloom, J.) (denying motion to dismiss). At a later stage in this case, the issue of whether a trip is indeed substantially similar to a slip might be more

18

effectively analyzed, especially after discovery, which might reveal whether the fact patterns between an incident called a slip and fall is indeed dissimilar to a trip and fall on the same deck.

<u>**Negligent Training and Negligent Supervision**</u>

Negligent training and negligent supervision "are both recognized duties under federal maritime law." *Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1310 (S.D. Fla. 2021) (Torres, Mag. J.). "Negligent training occurs when an employer was negligent in the implementation or operation of [a] training program and this negligence caused a plaintiff's injury." *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275, 1304 (S.D. Fla. 2021) (Moore, J.) (cleaned up). Negligent supervision, on the other hand, "occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment." *Id.* (cleaned up).

For a plaintiff "to state a claim for negligent training, he must show that [the defendant] was negligent in the implementation or operation of [a] training program." *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005). To state a claim under a theory of negligent supervision, by contrast, a plaintiff: "must allege that (1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment." *Quashen*,

19

576 F. Supp. 3d at 1304.

As to *both* claims, however, "it is well settled that general maritime law does not recognize a claim of negligence that is premised upon a company's general policies and operations." *Id.* at 1297.

As outlined above in the section summarizing the factual allegations, Perera's allegations are sufficient to state a claim for negligent training.

"Remember," as *Spotts*[3] reminds us, "to state a claim for negligent training, [a plaintiff] must [allege] that [the defendant] was negligent in the implementation or operation of [a] training program. He cannot merely challenge the content of the program." *Mercado*, 407 F.3d at 1162. And that's exactly what Perera has alleged here – that Carnival trains and instructs crew members that "its floors are slippery when wet or carpet is bundled up which can cause passengers to slip and fall or trip and fall and get injured." [ECF No. 1, ¶ 28]. In addition, the Complaint further alleges that Carnival "trains and created procedures which require crew members to place caution signs on walkways that become repetitively hazardous wet and/or are known to be dangerous." *Id*.

And the Complaint then alleges that, on the day in question, Carnival "was negligent by failing to reasonably train its crewmembers to inspect, clean, maintain and warn passengers of the dangerous conditions on board the *CCL Conquest* including the

---

[3]    2024 WL 111921, at *5.

subject area where Perera fell on December 30, 2022." *Id.* at ¶ 57. This language is strikingly similar to the language used in the *Spotts* complaint, which the Court deemed sufficient to avoid a motion to dismiss a claim for negligent training.

Moreover, as highlighted by the *Spotts* Court, a Middle District of Florida Court found similar allegations sufficient in *Harrison*:

> [P]laintiff [Harrison] alleges that she was harmed when Red Bull's employee operated his handcart in a negligent manner while distributing Red Bull's product to a Circle K convenience store. Harrison contends that her injuries resulted from Red Bull's negligent failure to train its employees regarding safe delivery of its product to the convenience store. Drawing all permissible inferences in Harrison's favor, the [c]omplaint pleads sufficient facts to show that Harrison, as a Circle K customer, was in a reasonably foreseeable zone of risk from the actions of Red Bull's delivery employee such that a legal duty of care in training the delivery employee ran from Red Bull to Harrison. Accordingly, the [c]ourt finds that plaintiff has pled sufficient facts to sustain her theory of negligent training.

*Harrison v. Red Bull Distrib. Co., Inc.*, 2019 WL 1117022, at *2–3 (M.D. Fla. Mar. 11, 2019) (Steele, J.). We think Perera has "done the same here." *Spotts*, 2024 WL 111921, at *5.

To be sure, it is "[t]rue [that] a plaintiff "cannot state a claim for . . . negligent training . . . with boilerplate allegations,"[4] and courts in our District have granted motions to dismiss claims of negligent training where "those claims are devoid of any facts" and provide "no details of . . . facts specific to the [ship], the [ship's] crew, or even with respect to Carnival as a company." *Donaldson v. Carnival Corp.*, 2020 WL 6801883, at *2–3 (S.D. Fla. Nov. 19, 2020) (Scola, J.). But Perera, similar to the Plaintiff in *Spotts, has* made specific

---

[4]     *Id.* (citing *Diaz*, 555 F. Supp. 3d at 1311).

factual allegations about Carnival's "trainings and procedures," and he *does* claim that Carnival failed to "reasonably train[ ] its crew members to inspect, clean, maintain and warn passengers about the dangerous conditions on board the *Conquest* including [the] subject area where Perera fell on December 30, 2022." [ECF No. 1, ¶¶ 28; 57].

Because Plaintiff "hasn't had the chance to take any discovery, we can't imagine asking a plaintiff to provide more detail than that." *Spotts,* 2024 WL 111921, at \*5. We therefore recommend denial of the Motion to Dismiss Count III.

However, similar to the *Spotts* Court, we "come out the other way" on the negligent supervision count (*i.e.*, Count IV). *Id*.

"To state a claim for negligent supervision under Florida law, a plaintiff must allege that an employer had notice that an employee was unfit but unreasonably failed to investigate the employee and take corrective action." *Erickson v. Manatee Cnty. Sheriff's Dep't*, 824 F. App'x 861, 865 (11th Cir. 2020); *see also Doe v. NCL (Bahamas) Ltd.*, No. 18-20060, 2018 WL 3848421, at \*3 (S.D. Fla. Aug. 13, 2018) (Scola, J.) ("To state a claim for negligent supervision, a plaintiff must allege that (1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment." (cleaned up)).

Here, Perera has not alleged that Carnival knew or should have known that its crewmembers were unfit -- nor has he claimed that Carnival unreasonably failed to investigate or take corrective action against these specific crewmembers. In fact, as

Carnival contends in its dismissal motion, most of the allegations asserted in Count IV are "duplicates" of "almost the entirety of the language contained in Count III [concerning negligent training] with no factual support regarding an employee [who] was somehow negligently *supervised*." [ECF No. 9, p. 5 (emphasis added)]. We therefore recommend that Judge Williams grant the Motion to Dismiss as to Count IV, with leave to amend.

## Negligent Design

[L]iability based on negligent design requires [the p]laintiff to produce evidence that the [d]efendant 'actually created, participated in or approved' the alleged improper design." *Hoover v. NCL (Bahamas) Ltd.*, 491 F. Supp. 3d 1254, 1257 (S.D. Fla. 2020) (Cooke, J.) (quoting *Groves v. Royal Caribbean Cruises, Ltd.*, 463 F. App'x 837, 837 (11th Cir. 2012)). "In addition, a defendant can only be liable for negligent design 'if it had actual or constructive notice of [the] hazardous condition.'" *Liles v. Carnival Corp. & PLC*, 2023 WL 34644, at *2 (S.D. Fla. Jan. 4, 2023) (Bloom, J.) (quoting *Groves*, 463 F. App'x at 837).

In his Complaint, Perera asserts that "Carnival breached its duties of care owed to PERERA and was negligent by approving, designing, constructing, and/or selecting, the floor for the main run carpet in the Interior Stateroom section of its Lido Deck 9 on board the *CCL Conquest*." [ECF No. 1, ¶ 85]. He similarly alleges that Carnival failed to design, construct, select, approve, and/or reject materials that complied with industry standards. *Id.* And he likewise alleges that "[t]he design and/or materials CARNIVAL approved or

23

selected and used to construct the main run carpet in the Interior Stateroom section of its

Lido Deck 9 on board the *CCL Conquest* was unreasonably dangerous." *Id.*

To provide factual support for these allegations, Plaintiff also asserted myriad

facts concerning Carnival's purported intimate involvement in the design and

construction process of the ship. Specifically, Perera raised the following allegations:

> 77.    CARNIVAL has all of its ships including the *CCL Conquest* and its sister ships custom made to its own design and specifications. After CARNIVAL's designs are created, CARNIVAL approved, and/or controlled or had the right to control the construction of the structures as well as the selection of all materials on board the *CCL Conquest* including the subject flooring and carpeting.

> 78.    The *CCL Conquest* was designed by or at the direction of CARNIVAL's shoreside New Build and other shoreside departments. CARNIVAL maintains shoreside departments that are responsible for the design, selection and construction of CARNIVAL's ships. CARNIVAL also maintains shoreside departments that are responsible for changes and modification to the design, construction and selection of materials when CARNIVAL refit or modifies its ships. These shoreside departments consist of naval architects, engineers, designers and other employees who are employed by CARNIVAL.

> 79.    CARNIVAL custom built the *CCL Conquest* cruise ship in a shipyard in Italy under constant supervision of CARNIVAL's onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, CARNIVAL not only had full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. CARNIVAL holds the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, CARNIVAL can withhold payment. That includes the materials used on all the floors or surfaces onboard the *CCL Conquest* which caused this incident and these injuries.

24

80.     CARNIVAL at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations[5] that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C, Regulation 13*, subpart 1.1 "safe escape routes shall be provided".); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.") CARNIVAL's Interior Stateroom section of its Lido Deck 9 are escape routes that CARNIVAL knew or should have known it must maintain in a safe, clear, clean and secure condition.

81.     CARNIVAL chose to create, design, and construct all of the surfaces on board the *CCL Conquest* including where PERERA fell on December 30, 2022. CARNIVAL selected and/or approved of all materials on board the *CCL Conquest* including where PERERA was injured on December 30, 2022. Because CARNIVAL had the ultimate control over the design, construction and selection of materials for its ships, CARNIVAL could have refused to approve the design, construction and selection of materials used for the main run carpet in the Interior Stateroom section of its Lido Deck 9 on board the *CCL Conquest*. Despite knowing that the main run carpet in the Interior Stateroom section of its Lido Deck 9 was dangerous, CARNIVAL approved

---

[5]      "[T]he law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." *Holderbaum v. Carnival Corp.*, 87 F. Supp. 3d 1345, 1353 (S.D. Fla. 2015) (citing *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11– 20723–CIV, 2012 WL 1792628, at *3 (S.D. Fla. May 15, 2012) (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*,519 F.2d 1178 (5th Cir.1975); *Frazier v. Continental Oil Co.*,568 F.2d 378 (5th Cir.1978)). *See also Giorgio v. Holland Am. Line, Inc.*, No. C05–0038-JLR, 2006 WL 1042003, at *2 (W.D. Wash. Apr. 4, 2006) ("Regulations that are not binding by force of law, and therefore do not establish negligence *per se*, may nonetheless be admitted for the purpose of aiding the finder of fact in determining the applicable standard of care."); *Altidor v. Carnival Corp.*, 550 F. Supp. 3d 1322 (S.D. Fla. 2021) (relevant industry guidelines admissible, though not conclusive); *Peck v. Carnival Corp.*, No. 16-20214, 2017 WL 7726728, at *6 (S.D. Fla. July 13, 2017) (allowing an expert to rely on International Building Codes, stating "even if the standards utilized by [the expert] in the formation of his opinions are not mandatory on cruise ships, [the expert's] explanation regarding passengers' expectation pertaining to stairway design based upon standards accepted by the international community of architects is reliable").

the installation of the flooring and carpeting as CARNIVAL was and is operating the *CCL Conquest* with the subject flooring and carpeting.

82.     CARNIVAL either had actual notice and/or had constructive notice of the dangerous condition as alleged in paragraphs 1–30 above and incorporated herein.

83.     CARNIVAL knew or should have known that the main run carpet in the Interior Stateroom section of its Lido Deck 9 it chose and installed on Deck 9 of the *CCL Conquest* was unreasonably dangerous and hazardous when bundled up or improperly maintained.

84.     CARNIVAL knew or should have known of the dangerousness of the main run carpet in the Interior Stateroom section of its Lido Deck 9 on board the *CCL Conquest* since their installation in 2002.

[ECF No. 1, ¶¶ 77–84].

Like the *Spotts* Court's ruling, which was based on substantially similar allegations, we conclude that Plaintiff here has "done just enough" to state a claim for negligent design. *Spotts,* at *7; *see also Donaldson*, 2020 WL 6801883, at *4 (holding that, "[w]hile the [plaintiffs'] allegations are not well developed, they do withstand scrutiny at the motion to dismiss stage" because the complaint stated that the "'[d]efendant participated in the design process'; 'approved of the Carnival *Dream*, including providing specifications to the shipbuilder'; and . . . 'maintains the contractual right to participate, review, modify, and/or reject the design plans'" (cleaned up)); *Canyes v. Carnival Corp.*, 2022 WL 4270001, at *3–4 (S.D. Fla. Sept. 15, 2022) (Bloom, J.) (denying motion to dismiss negligent-design claim where the complaint alleged that the defendant "actively participated in the design and construction of the Carnival *Horizon*" and "actively participated in the design and construction of the cabin" where the plaintiff was injured,

26

"including the upper berth bed [and] the placement of the refrigerator adjacent to the wall on the floor"); *cf. Liles*, 2023 WL 34644, at *2–3 (granting motion to dismiss negligent-design claim where the plaintiff alleged "*no* facts . . . in support of [her] conclusory assertions that Carnival participated in the design process of the tender and ramp, which are not on or part of the *Vista*, or that Carnival otherwise approved those designs" (emphasis added)).

Given that Plaintiff has alleged here that Carnival participated in (or approved of) the design of the area that caused his injury -- the ship's Lido Deck -- his allegations are sufficient to survive a motion to dismiss.

### III.   <u>Conclusion</u>

The Undersigned **respectfully recommends** that Judge Williams **grant in part and deny in part** Carnival's dismissal motion -- but without prejudice and with leave to file an Amended Complaint within ten (10) days of issuance of an Order approving this Report and Recommendations. Specifically, we recommend that the motion be granted as to Count IV but denied as to the other four counts.

As flagged above, we must treat the allegations as true for purposes of evaluating the dismissal motion. Some of those critical allegations may be difficult to prove. Plaintiff, of course, will likely reach "the critical put up or shut up moment" of the case in the likely-to-be-filed summary judgment motion. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 878 (7th Cir. 2021). For now, though, most of his claims

will survive and one claim might be resubmitted in an amended form (if this Report and Recommendations were to be adopted).

**IV.**   <u>**Objections**</u>

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, April 24, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to:**</u>
The Honorable Kathleen M. Williams
All Counsel of Record

28